Oral argument not to exceed 15 minutes per side. Lyndall Miller for the appellant. You may proceed. Good morning. Good morning, Your Honor. I would like to reserve three minutes for rebuttal. Very well. May it please the court, opposing counsel, my name is Scott Miller and I represent Officer Detrick Cooper in this matter. And less time than it took me to introduce myself, the altercation which lasted around four seconds between Officer Cooper and Sterusky was over. Tense, rapidly evolving, uncertain situation that Officer Cooper faced that day. What is that gap that you're saying is four seconds? I'm curious. Four seconds from the time that the videos shut off and there's some conversation going on where with all due deference to the court and the judges, Sterusky says, and you can hear this, in his call to action, fuck it. And within two seconds you can hear Cooper screaming and then within two more seconds you hear the shots fired. That's the four seconds that we're here about today. Well, the altercation had started 20, 30 seconds depending on what you call it in terms of hands on, falling down, you know, that's all lead up also. But at another place in your brief you say, well, you know, we'll concede everything about that because everything that happens during that time you're saying that we should take it as Sterusky, I'm reading from your reply brief, but it recaps, unarmed, inside the car and fleeing and any deadly force had abated. So the who shot John, as it were, about what you call the four seconds, isn't that irrelevant assuming that what you've said lets you get before us under Johnson v. Jones? So which should we worry about? Should we worry about your statement here or should we worry about the reality of what went on? Your Honor, this whole incident transpired on video and right up to the end. Up until the video goes off. That's right. And then you run into this fact where, well, we've got uncontested facts because it's on the video and then we have the video remaining on but being knocked off of Officer Cooper. So you can still hear. You've got audio but not video. And you hear, prior to that, you see Officer Cooper trying to stop him from getting in the car and they're in that door jam of the car on the video. And then you hear conversations back and forth. You hear Sterusky say, it's been a long day, yet it's only 925 in the morning. And then you hear the call to action and that's where we're talking about something happened. What you call it a call to action, it's words. We don't have any video as to what he's doing at that point. I take it you think or you claim that he's stabbing him at that point because on page 13, you say something about less than a second between two stabbings but there's nothing that's stabbings on audio or video. You must be referring to the two times that he says fuck it. That is, you're assuming that those words are the accompaniment of stabbings. Is that correct? That's what led to the stabbing in that two second period. That's what... Well, but again, correct me if I'm wrong, there's nothing on audio, there's nothing on video that correlates those times to stabbing. That is, the stabbing that you have is the picture of the vest and Officer Cooper's statements. I didn't see Cooper say even a year later, he stabbed me when he said fuck it. He says he stabbed me when he came at me with an evil gaze in his eye. Is that fair? Yeah. And that's the time period we're talking about. And I think we have to caution ourselves of thinking that, well, it's not on video so then we've automatically got to question the fact when we don't. And what we have is clear evidence from Cooper's recitation of what happened. And remember, we're looking at what a reasonable officer perceives under the circumstances, under Graham versus Connor. It's not what the video shows. We're fortunate to have a portion of the video. But the lack of a video is not evidence that it didn't happen. Cooper's recitation of the events are very important here in saying he was stabbed, knocked to the ground, suffered a concussion, and returned fire all within that four second period that we're talking about. And when you look at the objective evidence, you can see... So within the four seconds, because he also says he was outside the car, so he must then have gotten into the car, closed the door, put the steak knife down, put the car in gear, and then been shot an additional significant number of times. Is that sort of your feeling of the episode? Well, I feel like there's the altercation in the door jam that starts. Now, what Officer Cooper says is he doesn't remember whether the door was shut, whether he was inside the car at the time or not. And for purposes of this argument, we're stipulating that that could have been by the time he's knocked to the ground and comes back up and starts firing. Your stipulation, though, that I read is that he was unarmed. There never was a knife. There never was a stabbing. The unarmed portion, the only thing that the appellee has put forward about unarmed is the fact that he says, well, it could have been an ink pen. Well, but no, I'm reading from your brief. He used an object other than a knife, or in the alternative, Starewski was unarmed. Assuming that you're looking at it from the standpoint of a pen not being a potential armed weapon, as the plaintiff has put forward. So when you say unarmed, you mean he didn't have a knife, but he had an object. You don't mean he didn't have anything. Is that right? Yes. And what I'm, I'm sorry. I mean, the brief is not, I read your brief the same way that Judge Boggs reads your brief, but my understanding, I guess maybe it's, Officer Starewski, there may be some conflict about whether it was a knife or inconsistency, I suppose, about whether it's a knife or a  You know, at one point he says it's a long object. He's pretty clear in the depot it's a knife. He's always been consistent that the guy came at him and tried to stab him, I think. Is that right? Yes. Okay. So he could have been unarmed with a pen. You would call that unarmed. I find it confusing in the brief, but it seems, if I'm just going through the testimony, not what you're saying. I do not call it unarmed. That's what the plaintiff is referring to. I'm confused about your brief. We're relying upon the plaintiff's version of the event, saying that there, even if he was unarmed and it was just a pen, you've still got the situation. Okay. So if I have a pen, I'm unarmed. If I'm trying to stab you with a pen, you would say I'm unarmed, but I'm trying to stab you with something. Is that what you mean in the brief? No, Your Honor. What do you mean in the brief? We're stipulating to what the plaintiffs have put forth. That's the only evidence, objective evidence, that they've put forth that he wasn't armed. They say, they quote in their brief that the time that, aftermath of the incident, that he says, well, he doesn't even know if there's any weapon. That doesn't happen on the video. The only thing that happens on the video is he says it's not. Are you stipulating that this guy, that Staruski, could have attacked or been struggling with Cooper with nothing in his hands and the officer Cooper did not perceive anything in his hands? He just came at him unarmed with nothing? Are you stipulating that? And then you're stipulating that he got shot while he's in the car? Your Honor, we're not stipulating to the fact that he may have had nothing. There's never been any evidence put forward in this case that he didn't have something in his hands. Even the appellee has nothing in his hands. Right, which is why conceding something in your brief seems very odd to me. Your Honor, you're correct. That is stipulated to for the purposes of this argument. However, that's stipulated because that's the evidence they put forward in implying that a pen doesn't institute that you're armed. And that's the only objective evidence that they put forward to counter that this didn't happen. And that's what we're saying the lower court should have looked at was what the officer's objective, reasonable perceptions were under the circumstances. And then the court can't just say, well, we're going to speculate as to what happened without some supporting facts to support that. And the only facts they put forth was that if there was a weapon of any weapon, then he would have been unarmed. Yet there's nothing, and the only thing they rely upon is that video where he says, well, it could have been a pen. And that doesn't mean he was armed. Well, they state, and my watching of it is fairly consistent with this, I'm looking at page three of their brief about the body cam footage, that contemporaneous, where Cooper expresses uncertainty about whether he had any weapon, and then he says it could have been a pen. Is that a fair, at least we're talking about the right thing to look at? Yes. There is footage of that that I or we or a reasonable juror could look at and get some wisdom from. I think the video is clear that there's never any mention of him saying anything about not having a weapon. He says it could have been a knife. And I think there's an inference made from that saying, well, he was unarmed because of having an ink pen and suggesting that an ink pen is somehow not a deadly weapon. An ink pen in and of itself isn't a deadly weapon unless it's adapted for the purposes of being a deadly weapon. And that's the argument we make in this case. If, under these circumstances, the court looks at the lower court's decision, and I take it that let's then grant that there was a deadly force threat, and then your fourth stipulation is that it had abated by the time the shots were fired because he's now inside the car, which you, as number two, you concede or stipulate that he was inside the car when all the shots were fired. And what we know from the audio that you can hear is this, from the time the door jammed to this, to he says this, to the shots are fired are four seconds. And the courts have said... I'm sorry. When you say from the door jam, the part where he puts his hands on him, and we hear that is about 39 seconds before things all end up. That is, if there is a fuss about what really happens, it's what happens between the laying on of hands and the first shot. Isn't that kind of the fuss? Yeah, but you can still hear what's going on on the video. And you can tell that he's made a decision to fire in that time frame of when you hear him scream, Officer Cooper scream, from hitting the ground. Do you think he screams from hitting the ground? I thought from the stabbing. I thought because you, again, in your brief at page 13, you refer to two stabbings. And the only thing that would make any sense is that you're referring to the two curses. Am I right about that? I mean, you wrote the brief. You're correct. So when you say two stabbings, is that what you're referring to? Two stabbings, hitting the ground, coming up and firing. And even if the threat has been abated at that point... Do you think the stabbings happen before he hits the ground? Because the video, what makes the video stop is when he hits the ground, isn't it? The video's off while they're still in the door jam. It falls while he's still there in the door jam interacting with Starewski. Your theory is that the threat had abated and your client still shot him after the threat was abated? Is that your theory? Your Honor, I think the case law supports the fact that when you're making an instantaneous decision in a life or death situation, and you've made the decision to use deadly force... Even though he's no longer in fear of his own safety or life, that it's all right to use deadly force at that point? The courts have said it's not... If it's in a short time, compressed time frame, then you're looking at a time period where he's not maybe able to perceive that the threat has abated. You mean the threat has objectively abated, but he perceives there to still be a threat? Is that what you're saying? Yes. It doesn't have to be reasonable, though. Doesn't his feeling of imminent threat of deadly force, it has to be a reason... It can't be an unreasonable belief. It has to be reasonable. Okay. Well, how could it possibly be reasonable under these circumstances when Cooper is in the car, they're separated, the threat has abated, and he shoots him? I mean, even under your theory, how can you use deadly force in this instance? I mean, I don't understand it. Well, this all happened in a very short amount of time that he perceived a threat and responded to that threat immediately. Even if in the time period between he made the decision to shoot and Strzewski had closed the door and was leaving, he still perceived that and immediately responded to the threat. Is that a jury question then, whether his perception was reasonable or not under these circumstances? And would that be a reason not to grant summary judgment here? No, Your Honor. I think he's entitled to summary judgment based upon the fact that he reasonably perceived the threat immediately. But is the issue of the reasonableness of his perception a jury issue, the issue of fact? The reasonableness of... The courts have held that it's a question of law for the courts to decide whether it's reasonable or not under the circumstances once you've established the facts to go by and make a determination. Just like in Scott v. Harris, where they not only determined the facts, they also made a reasonableness determination as well. I see I'm out of time, Your Honor. Okay. You'll still have your rebuttal, Mr. Miller, three minutes rebuttal. Thank you. All right. Let's hear from the plaintiff's attorney. Oh, may it please the court. Good morning. Good morning, counsel. As counsel indicated, and as the briefs suggest, that right now, the undisputed facts for purposes of this appeal are that Chris Taruski was unarmed. He was inside a vehicle. But when you say he was unarmed, I'm confused. Officer Cooper consistently maintains that Taruski tried to stab him. He has been a little bit inconsistent, I suppose, in what it was that Taruski had when he was trying to stab him, whether it be a pen or a knife. But it seems undisputed to me and consistent with the circumstantial evidence that Taruski tried to stab him, right? No, Judge. That's not right. If you were to look at the summary judgment pleadings, the expert reports, there's substantial discussion about the nature of these defects, which are very tiny, the fact that they are adjacent to a pen in his pocket, the fact that there is a pen right below his lapel. Why do you need that? I don't know why you would need that. He says right away, the guy tried to stab me. Then he says in the report, the guy tried to stab me. And then he says in his depo, under oath, the guy tried to stab me with a knife. I don't know that it's... And there is some distress on his clothing. The distress on his clothing may or may not be consistent with a stab wound. But it doesn't really matter, right? Because he's already testified one time, and he wasn't under oath for the interview, I take it, right? But in the immediate aftermath, kind of an excited utterance, he's like, the guy tried to stab me. So, I mean, it seems undisputed that the guy tried to stab him. I think that the case law also says that we can't just accept self-serving testimony or self-serving statements when there's circumstantial evidence and forensic evidence that contradicts it. At that point, it becomes a jury. If it contradicts it, I agree with that. I guess I'm not seeing anything that contradicts that statement. Well, I don't think there's anything that contradicts the statement. I think that there's contradictory evidence that it actually happened as he states it did. So, he can state repeatedly that there was an effort to stab him. What is the contradictory evidence? It's the lack... It's essentially the lack of a stab wound on his clothing? Or the fact that the distress to the clothing could be consistent with something other than a stab attempt? Both. It's that the size and nature of the defects combined with the fact that there were other items on his person when he fell down that were capable of causing those very minor defects. But I don't see that... Maybe it's semantic. I don't see that as contradicting his statement in the same way that, like, a videotape in Scott D. Harris would contradict what somebody is saying. Well, I think that if, as we've suggested, that there was a physical... Because it's undisputed that there was, at the time you can see on the video, that he has a soft, empty-handed hold on Chris Daruski. At some point, there is separation. At some point, Officer Cooper goes to the ground. At some point, Chris Daruski gets in the vehicle. Officer Cooper gets up and fires 17 times. Nowhere in there is there some sort of forensic proof that there was an actual effort to stab him, let alone stab him. But I don't... I mean, I guess the question is, does there need to be forensic proof if there's... I mean, look, I realize the testimony is undisputed because, you know, Mr. Daruski is deceased. So I think we've said, look, we understand the reality of that situation. And the reality is, we're going to be a little bit more skeptical, I suppose, of somebody's  But we still need to see some kind of evidence, you know, that would say, oh, it really looks like... There's a distinct possibility that this never happened. And I'm looking for that evidence. And what you're saying to me is, the markings on the clothing... What happened on the clothing is not consistent with a stabbing. Is that where we are then? That's correct. And it's also the Kentucky State Police's conclusion that they're inconclusive on the source of whatever caused those defects, including not being able to rule that it was a knife. So, you know, it's just like the district court said in their opinion that, you know, when looking at the facts, a reasonable jury can conclude that there was a physical hand-to-hand struggle. Cooper goes down to the ground, face first, hits his head, goes down on his knee, turns around. Officer Chris Daruski has put his vehicle in reverse, is trying to flee. That's when the gunshots happen. If it's undisputed that Staruski tried to stab Cooper, does that end the case? He gets qualified immunity because of the time period in which this happened? It was just too soon for there to be some perception that the imminent danger had abated? Or can you still defeat qualified immunity if that were true? We still look at Bogus v. Mattingly. So if there's a physical struggle, there's separation and attempt to flee, unreasonable to use deadly force at that point. Here what we have is a... We have... When is it? What second, what marker of time does it, all of a sudden the police officer is supposed to say, okay, we're done, I'm going to let you go? I think Officer Cooper's own statement that he was in the vehicle in the process of trying to flee and that the gunshots were to prevent escape should show that there was enough time for him to perceive that, react to that, and make a conscious decision to shoot to prevent him from fleeing. How about the stipulation? I mean, in the reply brief, stipulation number four, the deadly force threat actually had abated when the shots were fired. I mean, that's conceded, right? We think that those... I mean, we don't really have to get into this based upon that, because we've got the concessions, right? That's right. And also about the, whether he had a knife or a ballpoint pen. The first stipulation used an object other than a knife to stab Cooper such as a ballpoint pen, or in the alternative, he was unarmed. So ballpoint pen, or in the alternative, unarmed, unarmed. There's got to be something other than the ballpoint pen. So there's, anyway, I don't think there's much to argue in view of the concessions here. And I don't have anything else, but I'm happy to answer any questions. Well, okay. I guess I get it quick. They say, okay, considering all these concessions, an officer could reasonably shoot and kill somebody who's trying to flee the officer, who the officer tried to arrest for having a nonconforming license plate. And is there any authority that officers have a right to shoot and kill somebody fleeing from such a misdemeanor offense? I mean, they say there is. What do you say to that? We look at the three lines, the three cases that we cited in terms of fleeing vehicles, and the closest that I think that they could come was Plum Hoff, and that was a very violent high-speed chase. That was other people who were in danger if the person were allowed to flee. Here, is there any danger to anybody in the public if this person left with his car? No. I don't think there's even an argument, is there? No. And Officer Cooper doesn't argue that because at the time he gave his deposition, he was asked if he would have been justified to shoot when the vehicle was fleeing, and he said no. Sorry, is he going to be justified to shoot? Officer Cooper, at the time of his deposition, because his story had changed a little bit by then, was point-blank asked if he would have been justified to shoot if the vehicle was fleeing. That's a legal conclusion. That's not a proper question to begin with. Well, I think it shows his own perception of what was reasonable at the time, if that had been the case. Okay. Mike? But that's the key, isn't it? It's his perception at the time? Well, it's a perception from a reasonable officer. From a reasonable officer's standpoint, given all of the evidence. So this stipulation number four, if just metaphysically, if the deadly force had abated, that's, I suppose, relevant, but really it's the officer's perception that matters, a reasonable officer's perception that matters, right? In a split-second situation? Correct. It's a reasonable officer. Was a threat imminent? It seems to be their own concession there that it was not. The two cases that they seem to try to, to me, are not so much Plumhoff as Brousseau, where the Supreme Court reversed the Ninth Circuit, and then Reich versus Elizabethtown, where they try to say, well, those are instances which were comparable to this. Do you have a response to that? Those right there, again, we have to accept disputed facts for those to be relevant. So in the situation of Reich, you know, it's, the court, it was undisputed at that point that you had a situation with a knife, that, I'm trying to remember it distinctly, but that, well, maybe try Brousseau, because there, I believe, the person was fleeing, that they had driven, had not run into anybody, but had driven around some other people. Are you familiar with that case? It's the one I'm thinking it was similar to Plumhoff in the sense that they had showed that there would be a reasonable belief that he was a threat of serious injury or death to the public, but I may be confusing it with Plumhoff, so. Okay, because in Plumhoff, you had had a very extensive, lengthy chase of craziness. In Brousseau, it was considerably less in my reading, and perhaps in Reich as well. That was why I was asking you about those two cases, because I thought they, at least analytically, should have relied on those two cases as the ones to cite. So, if you don't have anything, we can read your brief. Any further questions? Judge Boggs? All right, Mr. Miller, you have three minutes for rebuttal. Thank you, Your Honor. When we look at the case, and we look at this compressed time frame in which he had to react to this deadly threat, I think the court said, look, we don't have this on video, and therefore, we have to bring in these facts to determine what happened, insinuate what happened, inferences as to what happened, but we don't have to do that, and the court is not permitted to do that. The court is permitted to look at it from the objective, reasonably officer standpoint, and as the judge pointed out, Officer Cooper has been consistent throughout that he was attempted to be stabbed with something. He was attacked, and in that circumstance, not only has his statement been consistent, the objective evidence supports that. Back to the video when the other officers arrive, prior, within seconds of this happening, you have two excited utterances from Cooper saying, he grabbed a knife, he tried to stab me in my chest. What about the inconclusive physical evidence, the marks on the clothing? Your Honor, I think that creates a question of fact as to what caused that, but it's objective evidence that supports his perception as to what happened, that something happened, and keep in mind, the KSP forensic lab determined it was a cut, it wasn't a tear, they said it was a cut. They couldn't determine what it was that made the cut, so yes, there is a question of fact that's not material to whether or not he was actually stabbed or not, or attempted to be stabbed with something. We know now that it didn't penetrate his skin and it didn't actually stab him, but once again, on the other officer's video when he arrives, you see Officer Cooper checking himself to see if he's cut, and therefore, the objective facts are supportive of his contention that he was attacked and he was attempted to be stabbed. If you look at the case law in Chapel v. City of Cleveland, it says that lack of affirmative evidence contradicting the officer's statement is not permitted. You have to look at it from what facts support the question of fact that's out there. As I said earlier, they have not put forth any objective evidence to counter what Officer Cooper says happened to him that day. Therefore, Officer Cooper's split-second judgment in a tense, uncertain situation is the exact situation that Graham v. Connor gives some deference to and says, based on his decision in those split-seconds, he is entitled to qualified immunity, and therefore, this court should overturn the lower court's ruling and issue summary judgment in his favor.